IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EHIZELE A. SEIGNIOUS,<br><br>   Plaintiff,<br><br>   v.<br><br>BALT. CO. DEPT. OF CORRECTIONS,<br>SERGEANT LOWMAX,<br>SERGEANT McDOWELL,<br>CAPTAIN D. GIZA,<br>LIEUTENANT CHURCH,<br><br>   Defendants. | Civil Action No.:  SAG-22-144 |

**MEMORANDUM**

In response to the above-entitled civil rights complaint, Defendants filed a Motion to Dismiss or for Summary Judgment. ECF 18. Self-represented Plaintiff Ehizele A. Seignious opposes the motion. ECF 20.[1] No hearing is necessary to resolve the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' Motion to Dismiss or for Summary Judgment shall be granted.

**BACKGROUND**

At all times relevant to the complaint, Plaintiff was incarcerated at the Baltimore County Detention Center ("BCDC") in Towson, Maryland.[2] He claims that he was erroneously accused and convicted of an institutional rule violation after he and four other inmates were identified as assailants who attacked another inmate, Roland McClain. ECF 9 at 1. Plaintiff explains that on December 3, 2021, McClain was assaulted, prompting an investigation by Sgt. McDowell. *Id*. McDowell viewed video footage from a closed-circuit television monitoring system and identified

---

[1]    The opposition response was incorrectly docketed as a supplement to the complaint.
[2]    Plaintiff is currently confined at Jessup Correctional Institution.

Plaintiff as one of the assailants. *Id*. Plaintiff was placed in "max restrictive housing for weeks" and received threats from other inmates at BCDC and Jessup Correctional Institution ("JCI"), where he is currently incarcerated. *Id*. at 1-2.

On December 6, 2021, Plaintiff was convicted on disciplinary charges of assaulting an inmate, inappropriate physical contact, and conspiring to commit any offense. ECF 18-4 at 2 (Defendants' Ex. C). Plaintiff's sanction was 30 days of restrictive housing. *Id*. at 3. Plaintiff filed an appeal of the guilty finding which was initially denied by Captain D. Giza on December 10, 2021. ECF 20-1 at 13. Major R. Alford requested Sgt. McDowell to look into Plaintiff's claim that he was not involved, and on December 15, 2021, Alford granted Plaintiff's appeal and ordered his transfer off of the segregation unit. *Id*. at 14.

As relief, Plaintiff seeks unspecified damages and for those responsible for his wrongful conviction to be held accountable. ECF 1 at 3.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts

2

to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible

3

where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.

## DISCUSSION

Defendants seek dismissal of the Complaint because it fails to state a Fourteenth Amendment due process claim and assert that Plaintiff's confinement to restrictive housing does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. ECF 18-1 at 4-5. They further maintain that any threats made against Plaintiff are not a viable basis for a constitutional claim and that they are entitled to qualified immunity.[3] *Id*. at 5-9. Lastly, they seek dismissal of the claims against Baltimore County Department of Corrections because it is not an independent legal entity subject to suit. *Id*. at 9-10.

**A.     Baltimore County Department of Corrections**

The text of 42 U.S.C. § 1983 provides in pertinent part that: "Every *person* who, under color of [law] of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." The Baltimore County Department of Corrections is not a person. *See Monell v. Dep't*

---

[3] Because this Court finds that Plaintiff's constitutional claims fail for the reasons stated herein, Defendants' qualified immunity claim is not addressed.

*of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002). Thus, the Complaint as to this Defendant must be dismissed.

**B.     Due Process Claim**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5.

Here, Plaintiff received advance written notice of the charges which referenced the closed-circuit television footage relied upon to charge him with the offense. The hearing officer also relied upon the reporting officer's statement to conclude that Plaintiff was guilty. Importantly, Plaintiff did not lose any good conduct time, and therefore the guilty finding did not present a

possibility that his incarceration would be prolonged. All of the requirements of *Wolff* were satisfied. To the extent there was not sufficient evidence to support Plaintiff's guilty finding, that error was corrected when it was overturned. Any infringement of Plaintiff's due process rights was therefore cured by his successful administrative appeal, because "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) *see also Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991) (finding no due process violation when the wrongful failure to permit a prisoner to offer log book evidence at a disciplinary hearing was reversed on appeal and corrected at a second disciplinary hearing, because the "administrative appeal process is part of the due process protection afforded prisoners"); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding that the prisoner-plaintiff "was ultimately afforded his due process protections" because the administrative reversal of his disciplinary proceedings "cured any procedural defect that may have occurred"). Any inability for Plaintiff to earn additional diminution credits while he was confined to segregation does not implicate a constitutionally-protected liberty interest, as that protection extends only to credits already earned. *See Wolff,* 418 U.S. at 557 (stating that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison"); *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of an opportunity to earn good-time credits through a prison job did not implicate a liberty interest).

      In addition to disciplinary hearings where revocation of diminution of confinement credits are possible, a liberty interest is also created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) ((citing *Wolff v. McDonnell*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005)). This liberty interest also requires due process. Lack of opportunity to earn or

have applied diminution credits is not an atypical and significant hardship. *See Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply. *Id.* (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224-25). "[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where, as in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Beverati*, 120 F.3d at 503.

Defendants maintain that the conditions under which Plaintiff was confined were not atypical. This Court agrees. Plaintiff was confined to segregation for approximately two weeks before he was exonerated of the charges and moved back to general population. There is no evidence before this Court indicating that the segregation conditions under which Plaintiff was

confined were sufficiently onerous so as to require protections to be in place prior to his transfer there. *See Incumaa*, 791 F.3d at 531 (finding confinement conditions that included "near-daily cavity and strip searches; the confinement to a small cell for all sleeping and waking hours, aside from ten hours of activity outside the cell per month; the inability to socialize with other inmates; and the denial of educational, vocational, and therapy programs" severely restrictive when coupled with potentially indefinite confinement and warranting due process protections). Based on the evidence before this Court, Defendants are entitled to summary judgment in their favor on the Due Process claim.

**C.      Failure to Protect**

Plaintiff asserts he has been subjected to ongoing threats from other inmates as a result of the accusation that he assaulted another inmate. In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)).

Plaintiff's claim fails to establish that Defendants were subjectively aware of any known, specific risk of harm to Plaintiff. A generalized claim that Plaintiff is the object of potential retribution from other inmates, who are intent on retaliating for an assault on another inmate, is simply not enough to establish a constitutional claim. There is no allegation that Plaintiff informed these Defendants of a pervasive risk of harm to his safety or that, despite that information, Defendants refused to take action to protect Plaintiff from harm. The claim must be dismissed.

## CONCLUSION

As set forth in the separate Order which follows, Defendants' Motion to Dismiss or for Summary Judgment shall be granted.

<u>December 5, 2022</u>                           <u>/s/</u>
Date                                                   Stephanie A. Gallagher
                                                                     United States District Judge